Argued September 2, reversed and remanded November 18, 1976

# BUSTO, *Appellant,*
## *v.*
# THE MANUFACTURERS LIFE INSURANCE COMPANY, *Respondent.*

556 P2d 96

*Howard R. Lonergan,* Portland, argued the cause and filed briefs for appellant.

*Vawter Parker,* Portland, argued the cause for respondent. With him on the brief were James C. Dezendorf, James H. Clarke, and Dezendorf, Spears, Lubersky & Campbell, Portland.

Before Denecke, Chief Justice, and McAllister, Holman and Howell, Justices.

HOWELL, J.

## HOWELL, J.

This is a declaratory judgment proceeding to determine the respective rights of the parties under an endowment insurance contract. Plaintiff maintained this action both individually and as the personal representative of his parents' estates. Plaintiff's father, the insured and a Cuban refugee, died in 1967, and plaintiff's mother died in 1974. Plaintiff's complaint alleged that the defendant insurance company, a Canadian corporation, owed $2,000, plus interest, under the terms of the policy, but had offered to pay only $699.05. Defendant's answer alleged that the contract had been amended by a supplemental agreement between the parties and that, pursuant to this agreement, it owed plaintiff only 2,000 Cuban pesos, plus interest.

Plaintiff requested a jury trial, contending that the supplemental agreement was ambiguous, that he was therefore entitled to introduce extrinsic evidence relating to the parties' probable intent, and that he was entitled to have the jury decide whether defendant was obligated to pay $2,000 worth of Cuban pesos, or 2,000 Cuban pesos. The court held that the evidence did not create a question of fact and that the interpretation of the supplemental agreement was a question of law to be resolved by the court alone.[1] Thereafter, the court made findings of fact and conclusions of law and entered judgment for defendant. On appeal, plaintiff contends that the court erred in refusing to grant him a jury trial on the issue of the proper interpretation of the supplemental agreement.

The record discloses that in 1945 plaintiff's father, while living in Cuba, purchased a 20-year endowment life insurance policy from the defendant insurance company with a face value of $2,000 and at an annual

---

[1] The matter was presented to the trial court in an informal manner. No witnesses were called and the facts were presented in what the parties describe in the briefs as a stipulation.

premium of $112. The policy also contained the following provision:

"4. CURRENCY. All amounts payable under the terms of this policy, either to or by the Company, are payable in Bankers demand drafts on New York, U.S.A., for United States Dollars."

At the time of the agreement, both U.S. dollars and Cuban pesos were legal tender in Cuba and had an equivalent value both in Cuba and elsewhere.

In 1952 both the insured and the defendant entered into a supplemental agreement which amended the policy and provided that:

"It is understood and agreed between the parties to the insurance contract referred to above that all payments to be made by virtue of this contract either to or by the Company are to be made in Pesos, legal currency of the Republic of Cuba."

Apparently, this was in response to a Cuban law which had become effective one year earlier and which required that thereafter all debts payable to or by Cuban nationals which were previously stated in dollars were to be discharged in Cuba in pesos. At this time, pesos and dollars still had an equivalent monetary value. However, after Castro gained control of Cuba, the value of the peso declined sharply against the dollar in world markets, although the official exchange rate in Cuba has apparently remained one for one.

In 1963, the insured and his family fled Cuba and came to the United States. The insurance policy had been paid up before they left Cuba, and, prior to its maturity date of May 4, 1965, the insured, plaintiff's father, wrote to the defendant to notify it of his election to leave the proceeds on deposit with defendant at 3 per cent interest in accordance with one of the policy's settlement options. Defendant then wrote to the insured and acknowledged his request, but stated that the policy would mature

"for a total sum of Cuban pesos 2053.48. This amount

[ 710 ]

consists of the full sum insured in Cuban pesos, two thousand, and increased by the total accumulated dividends due at maturity of Cuban pesos 53.48. The currency of the policy is Cuban pesos and the records are maintained in our office in Cuba. As a result, our office there is compelled to comply with the Cuban laws and currency regulations, which prohibit us from exporting any Cuban currency from that country or making any payment outside of Cuba. * * * As a result, any payment under the policy or withdrawal from the proceeds on deposit must be made in Cuban pesos to you in Cuba. We can quite understand that this is an impractical situation from your point of view, but regret that for the time being there is no alternative. * * *"

Plaintiff's father apparently never responded to these statements. However, on May 12, 1965, the following endorsement was unilaterally placed on the policy by the defendant:

"This contract having matured the proceeds of Cuban Pesos 2053.48 (after making the necessary adjustment for dividends) are retained on deposit under the terms of Option IV and interest shall be allowed from May 4, 1965. Such proceeds are held for the credit of Jose Maria Busto Lema and any balance remaining unpaid at his death shall be paid to his executors or administrators."

The insured died in 1967. In 1968, plaintiff's mother, the widow of the insured, wrote to defendant as follows:

"This is to inform you that I had a telephone call from the company's office in Miami, to the effect that they would pay me the policy at the rate of four pesos to one dollar. I agree with your procedure, but I want to ask you a favor. I do not want to cash that money for the moment, because I do not need it now, and I would appreciate it if I could leave it on deposit with the understanding that I will not lose the money if it is left on deposit for several years. Awaiting your reply."[2]

---

[2]The defendant does not take the position that this letter amounted to an accord and satisfaction. Accord and satisfaction is an affirmative defense, and the issue was never raised in defendant's answer. Moreover, on appeal, defendant has continued to argue that it does not legally owe plaintiff anything in U.S. dollars, but only 2,000 pesos in Cuba.

The record does not indicate whether defendant ever replied; however, the defendant has since tendered payment in this amount, with interest.

Essentially, plaintiff takes the position that the 1952 supplemental agreement merely modified the type of currency which was to be used in making payments by both sides under the contract, but did not affect the face amount of the policy. In other words, the supplemental agreement altered only paragraph 4 of the original contract, which set forth the type of currency for payment. Plaintiff contends that although pesos became the medium of exchange, the face value of the policy, $2,000, was never altered. Therefore, he believes that, under the terms of the contract, he is still entitled to be paid the equivalent of $2,000.

In our view, it is not clear from the terms of the supplemental agreement itself whether the parties intended the change to pesos to affect only the type of currency which was to be used in making payments, or whether it was intended to alter the face amount of the policy as well. Certainly, whichever alternative was intended, much clearer language could have been employed.

■ Although normally the interpretation of a contract is a question of law for the court, when the agreement is ambiguous the actual intention of the parties becomes a question of fact, and, unless the meaning of the writing is clear from the surrounding circumstances and usages, the issues should be submitted to the jury. *See, e.g., May v. Chicago Insurance Co.,* 260 Or 285, 490 P2d 150 (1971); *Libby Creek Logging, Inc. v. Johnson,* 225 Or 336, 358 P2d 491 (1960); 4 Williston on Contracts 649, 660-63, § 616 (3d ed 1961).

■ The defendant introduced evidence of the subsequent actions of the parties which tends to support its position concerning the proper interpretation of the

supplemental agreement. *See Tarlow v. Arntson,* 264 Or 294, 505 P2d 338 (1973).[3] However, in light of the change in Cuban law at the time, and in light of the fact that at the time of the agreement dollars and pesos had an equivalent value, we do not believe that it is clear as a matter of law that both parties intended the supplemental agreement to alter the face amount of the policy as well as the means of exchange. Plaintiff is also aided by the rule of construction that ambiguous insurance contracts, like other contracts, are construed most strongly against the company which draws them. *See, e.g., Salisbury v. John Hancock Mut. Life,* 259 Or 453, 486 P2d 1279 (1971); *Reed v. Commercial Ins. Co.,* 248 Or 152, 432 P2d 691 (1967). Therefore, we conclude that this issue should have been submitted to a jury, as plaintiff requested, for a determination of the intention of the parties. It follows that the judgment in this case must be reversed, and the cause remanded for a new trial.

On remand, if the jury finds in favor of plaintiff on this issue, plaintiff will be entitled to a judgment for the full amount of $2,000, plus interest and attorney fees as provided in the contract.[4] If the jury finds for the defendant, plaintiff will be entitled to an award

---

[3] Defendant also introduced additional evidence which indicates that after the supplemental agreement the insured continued to make the premium payments in a fixed amount of pesos even after the international exchange rate of dollars for pesos began to decline. However, this is not conclusive, since these payments were made to defendant's office in Cuba where the exchange rate apparently remained one for one.

[4] As a general rule, payment is due at the place where the creditor resides, or at his place of business, unless the contract provides otherwise. *Sterrett v. Stoddard Lbr. Co.,* 150 Or 491, 506, 46 P2d 1023 (1935). After the insured and his family fled Cuba, they established their residence in the United States. The policy matured while they were domiciled in this country. The contract does not provide for payment only in Cuba, and the laws of Cuba cannot preclude an American court from awarding judgment on an insurance contract between an American resident and a Canadian corporation. *See Pan American Life Ins. Co. v. Blanco,* 362 F2d 167, 170-71 (5th Cir 1966). *See also Imperial Life Assurance Co. of Canada v. Colmenares,* 1967 Can S Ct 443; Paradise, *Cuban Refugee Insureds and the Articles of Agreement of the International Monetary Fund,* 18 U Fla L Rev 29, 59-60 (1965).

based upon the exchange rate offered to plaintiff's mother in 1968 of one dollar for every four pesos.

Reversed and remanded.