Argued and submitted March 3, affirmed June 24, 1980

## PEREZ,
*Petitioner,*

*v.*

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
*Respondent.*

(No. 78 11 349, CA 13300, SC 26506)

613 P2d 32

Glenn D. Ramirez, Klamath Falls, argued the cause for petitioner. On the briefs were Glenn D. Ramirez, Klamath Falls, and Grant V. Mumpower, Portland.

Jay D. Enloe, Portland, argued the cause for respondent. On the brief were Jay D. Enloe, Portland, and Vergeer, Roehr & Sweek, Portland.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Peterson, and Tanzer, Justices.

PETERSON, J.

## PETERSON, J.

The sole issue in this case is whether the no-fault personal injury protection coverage in a motor vehicle insurance policy written to meet the requirements of ORS 743.800 includes loss of income benefits to the personal representative of a covered person who was killed in an accident. The trial court held that no such benefits were payable and entered summary judgment for the defendant. The Court of Appeals affirmed, 43 Or App 19, 602 P2d 284 (1979), and we granted the claimant's petition for review.

Plaintiff's decedent was a pedestrian who was killed instantly when hit by a car driven by defendant's insured. The motor vehicle policy issued by defendant included an agreement to pay various benefits to pedestrians injured by being struck by the insured vehicle, including funeral expenses and:

> "* * * 70% of the actual loss of income from work sustained during the period of disability if the disability continues at least 14 days ending on the date the injured person is able to return to his usual occupation; subject to a limit per injured person of not to exceed $750 per month for a period of 52 weeks; * * *." (Emphasis deleted.)

Defendant paid plaintiff's claim for funeral expense benefits, but denied her additional claim for loss of income benefits under the quoted portion of the policy.

The coverage at issue was required to be a part of defendant's policy by ORS 743.800, which provides in part:

> "Every motor vehicle liability policy issued for delivery in this state that covers any private passenger motor vehicle * * * shall provide to * * * pedestrians struck by the insured motor vehicle, the following hospital, medical, disability and funeral benefits for each accident:
>
> "* * * * *.
>
> "(2) All reasonable and necessary funeral expenses incurred within one year after the date of the accident, in the amount of $1,000 per person; and

"(3)    If the injured person is usually engaged in a remunerative occupation, 70 percent of the loss of income from work during the period of disability if the  disability continues for at least 14 days and ending on the date the injured person is able to return to the person's usual occupation; * * *.

"* * * * *."

ORS 743.805(1)(b) provides that benefits payable under ORS 743.800(3)

"* * * need not exceed $750 per month or be paid for a period exceeding 52 weeks."[1]

---

[1] The relevant policy provisions are almost identical to the statute:

"COVERAGE P - PERSONAL INJURY PROTECTION

"To pay, in accordance with Sections 743.800 to 743.835 inclusive, O.R.S. and all Acts amendatory or supplementary thereto, to or for the benefit of:

"(1)    the named insured and any *relative* who sustains *bodily injury,* caused by accident, in a *motor vehicle* accident:

"(2)    any other *person* who sustains *bodily injury,* caused by accident, while *occupying* the *insured motor vehicle* or through being struck by the *insured motor vehicle* while he is a *pedestrian,* PROVIDED THE ACTUAL USE OF THE *INSURED MOTOR VEHICLE* IS BY THE NAMED INSURED OR HIS *RESIDENT* SPOUSE OR WITH THE PERMISSION OF EITHER AND IS WITHIN THE SCOPE OF SUCH PERMISSION:

"(a)    all reasonable *medical expenses* incurred for services furnished within one year from the date of accident, subject to the limit shown for the applicable coverage designation in the Schedule for each *person* who sustains *bodily injury* in any one accident;

"(b)    all reasonable and necessary funeral expenses incurred within one year after the date of the accident, but not to exceed $1,000 per *person;*

"(c)    if the injured *person* is usually engaged in a remunerative occupation, 70% of the actual loss of *income* from work sustained during the period of disability if the disability continues at least 14 days ending on the date the injured *person* is able to return to his usual occupation; subject to a limit per injured *person* of not to exceed $750 per month for a period of 52 weeks." (Emphasis in original.)

The italicized words are in the policy. Normally, such words are italicized only to indicate that the words are expressly defined elsewhere in the policy. Subparagraph (c) tracks, almost word-for-word, with ORS 743.800(3) and ORS 743.805.

The phrase "injured person" and the term "disability" are not defined in either the statute or the defendant's policy.

■       Although plaintiff relies on the terms of the policy, she does not point to anything in its language suggesting that the coverage provided was different from the minimum required by statute. Although the arrangement of the policy provisions varies slightly from that of the statute, the dispositive language is virtually identical. We find no indication of an intention to provide broader coverage than the statute requires. As did the Court of Appeals, we therefore approach the issue as a problem of statutory construction.[2]

■       The lost income benefits which plaintiff seeks are characterized in the first paragraph of ORS 743.800 as "disability benefits." In construing a statute, words of common usage are to be given their natural, plain and obvious meaning. *Blalock v. City of Portland,* 206 Or 74, 80, 291 P2d 218 (1955). The term "disability," as ordinarily and usually defined, involves the inability of a person to perform activities regularly performed by such person by reason of weakness or incapacity, or the want of competent power, strength or physical ability.[3] The word "disability" is not ordinarily used to describe death, although death is undeniably the ultimate disability.

■       Subsection (3) of ORS 743.800 requires that benefits be paid for loss of income from work "during

---

[2] The familiar rule that ambiguities in an insurance contract will be resolved in favor of extending coverage, *Shadbolt v. Farmers Insur. Exch.,* 275 Or 407, 411, 551 P2d 478 (1976), is a particular application of the general rule of construction that ambiguous terms in a written instrument will be resolved against the party that chose them. *See Busto v. Manufacturers Life Ins. Co.,* 276 Or 707, 713, 556 P2d 96 (1976). It has no application when the extent of insurance coverage must be determined by construction of a statute. *See* 13 J. Appleman, *Insurance Law and Practice* 349, § 7406 (1976).

[3] *Ferguson v. Penn Mut. Life Ins. Co.,* 305 Ill App 537, 27 NE2d 548, 550 (1940); *Hill v. Ins. Co.* 146 Iowa 133, 124 NW 898 (1910).

the period of disability" and provides that the disability period ends "on the date the injured person is able to return to the person's usual occupation." From these provisions it appears that the legislature used "disability" to mean inability, while living, to perform one's usual work. Nothing in subsection (3) suggests a legislative intent that loss of income benefits must be provided to the estate of an accident victim whose inability to work at his or her usual occupation arises from the death of the insured person.

The obvious purpose of ORS 743.800 - 743.835 is to provide, promptly and without regard to fault, reimbursement for some out-of-pocket losses resulting from motor vehicle accidents. It would, of course, be possible and quite consistent with this purpose for the legislature to provide for some payment on account of lost wages to the survivors of the victim of a fatal accident. One would expect, however, that if the legislature intended to require such coverage it would have said so in clear language instead of attaching a highly unusual meaning to the undefined phrase "period of disability."[4] We decline to adopt a rule of construction to make a plain agreement ambiguous and then to construe it in favor of the insured. *Jarrard v. Continental Casualty,* 250 Or 119, 127, 440 P2d 858 (1968).

---

[4] See, for example, the following statutes in which the legislature has used the term "disability":

ORS 656.005(8)(a):

"A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death * * *."

ORS 656.005(8)(b):

"A 'disabling compensable injury' is an injury which entitles the worker to compensation for disability or death."

ORS 656.206(2):

"When permanent total disability results from the injury * * *."

ORS 656.208(1):

"If the injured worker dies during the period of permanent total disability, * * *."

The legislative history of ORS 743.800 lends no support to plaintiff's position. As originally enacted in 1971, that section contained no provision for funeral benefits. It did provide for "disability benefits." Former subsection (2), detailing those benefits, provided for their payment

> "* * * during the period commencing 14 days after the date of the accident and ending on the date the injured person is able to return to his usual occupation * * *." Or Laws 1971, ch 523, § 2(2).

Provision for funeral benefits was added in 1973 because, according to the Insurance Commissioner, that provision had been inadvertently omitted from the 1971 bill.   *See* 1973 Or Laws ch 551, § 1; House Judiciary Committee, Hearings on HB 2537, Minutes (April 17, 1973). During the same session the phrase "period of disability" was added to what is now subsection (3). Although the legislature's attention had been directed, by the proposed amendment adding funeral benefits, to the question of payments in the case of fatal accidents, there is no suggestion in the legislative history that the change in subsection (3) was related to that question in any way. The new language was part of a change designed to require payments from the first day of disability if the disability lasted 14 days or more. Committee Minutes, *supra* (April 25, 1973).

Cases from other jurisdictions have been of limited assistance because of differences in statutory language. *Benton v. State Farm Mutual Automobile Ins. Co.,* 295 So 2d 344 (Fla App 1974), and *Hamrick v. State Farm Mut. Auto. Ins. Co.,* 270 SC 176, 241 SE2d 548 (1978), involved statutory provision for "disability benefits" in no-fault personal injury protection coverage. Both cases are consistent with our decision in that the courts held the statutes did not require the payment of lost income for periods after the death of the wage earner. *See also, Griffin v. Travelers Indemnity Company,* 328 So 2d 207 (Fla App 1976) (policy provision for loss of income benefits "with respect

to the period of disability") and *Svec v. Allstate Insurance Co.,* 53 Ill App 3d 1033, 369 NE2d 205 (1977) (policy provision covering income lost "as a result of total disability"). The court in *Ricks v. Coffelt,* 369 A2d 680 (Del 1977) reached a contrary result under a statute which did not use the term "disability."

Plaintiff challenges the reasoning in *Hamrick v. State Farm Mut. Auto. Ins. Co., supra,* which is cited and discussed in the Court of Appeals opinion. Our decision is based on the language of ORS 743.800, and we need not consider whether the *Hamrick* court's observations about the "concept" and the proper "function" of no-fault personal injury protection benefits were correct. The Court of Appeals correctly concluded that the statute does not require loss of income coverage unless there is a period of disability prior to death.

The decision of the Court of Appeals is affirmed.