Argued and submitted January 15, affirmed April 12,
reconsideration denied May 27,
petition for review denied July 7, 1982 (293 Or 373)

STATE OF OREGON,
*Respondent,*

*v.*

GEORGE CURTISS JOHNSTON,
*Appellant.*

(No. DA 207739-8102, CA A21880)

643 P2d 666

A. Michael Adler, Portland, argued the cause for appellant. With him on the brief was Des Connall, P. C., Portland.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Young, Judge, and Roberts, Judge Pro Tempore.

ROBERTS, J. Pro Tempore*

Gillette, P. J., concurring.

---

* Appointed to Supreme Court February 8, 1982.

**ROBERTS, J.** Pro Tempore.

Defendant was convicted, on stipulated facts, of promoting gambling in the second degree, ORS 167.122, a Class A misdemeanor, for promoting bingo games conducted by Oregon Chapter No. 1 of Disabled American Veterans (DAV). Defendant was fined $350, of which $200 was suspended. He is a member of the DAV chapter and is its "club manager." ORS 167.122 provides:

"(1) A person commits the crime of promoting gambling in the second degree if he knowingly promotes or profits from unlawful gambling."

There is no allegation by the state that defendant profited from the organization's bingo games; the contention is that defendant knowingly promoted unlawful gambling. Defendant concedes that his actions amounted to "promoting" the games, as that word is used in ORS 167.122. The only issue is whether the bingo games operated by the DAV constituted "unlawful gambling" within the meaning of ORS 167.122. The trial court, in denying defendant's motion for judgment of acquittal, stated:

"Clearly, I don't think anyone can argue with the motivation here and the kind of work that the DAV is engaged in. That's clearly, they're engaged in good causes and always have. But they are clearly in violation of the statute. * * *"

We agree and affirm.

Defendant's principal argument is that the bingo games conducted by DAV are not unlawful gambling, because they are specifically excluded from the statutory definition of gambling. ORS 167.117(4)(d) provides that gambling does not include:

"Bingo or lotto operated by a charitable, fraternal or religious organization when no person other than the organization or a player profits in any manner from the operation of the lottery and when the organization has complied with the provisions of ORS 465.100(2)."

The state stipulated that the DAV is a charitable, fraternal or religious organization within the meaning of the statutory exclusion and that it had complied with subsection (2) of ORS 465.100, requiring it to notify the Commissioner

of Corporations of its intention to operate bingo games. The state's position is that because members of the chapter were paid a daily wage to assist in operating the games, a "person other than the organization or a player" profited from the operation, removing the chapter's bingo games from the statutory exclusion and making them unlawful gambling, as defined in ORS 167.117(14), *i.e.,* "not specifically authorized by law."

The more limited issue is thus whether the fact that individual "auxiliary members" of the chapter,[1] who were not players, received money as a result of the DAV bingo games means that a person other than the organization or a player "profited" from the operation. Defendant argues that the wages paid to the members who assisted with the games were expenses to the organization, or part of the costs of operating the games, and were not "profits" to anyone. The state argues that the proper interpretation to be placed on the language of ORS 167.117(4)(d) is that

> "a charitable bingo operation becomes unlawful whenever anyone other than a player or the organization itself receives value as a proximate result of the conduct of the game."

Maintaining that the language of ORS 167.117(4)(d) relating to profit is ambiguous, both parties turn to the legislative history of the statute and rely heavily on the same language from the minutes of the debate in the House Judiciary Committee. This language indicates that the principal evil the legislature sought to prevent by enacting the statutes, including ORS 167.117(4)(d), was the "taking over" of the operation of bingo games on behalf of charitable, fraternal or religious organizations by other organizations specializing in operating such activities for profit and who would charge a fee or collect a percentage for their work. This is obviously not the fact situation in the instant case.

However well-motivated DAV's actions, though, it is clear, the evil result—that money ostensibly contributed to the coffers of a charity is instead diverted to private

---

[1] To quote from defendant's brief, "Auxiliary members of the DAV chapter are associated with the chapter and assist in chapter operations."

parties—is the same.[2] As the state points out, there are persons deriving a substantial income from their participation in the bingo games.[3] That these persons are auxiliary members of the organization does not change the fact that they gain as individuals. The salary received by these individuals, paid out of the proceeds of a bingo game represented to benefit charity, certainly is a "profit" within the meaning of ORS 167.117(4)(d).[4]

■    Because individual members of the DAV chapter profited from the operation of the bingo games, the games were "gambling" not included in the statutory exclusion provided by ORS 167.117(4)(d). Since they were not authorized by law, the games were "unlawful gambling" within the meaning of ORS 167.122. Defendant did not dispute that he "promoted" these games. The trial court properly denied his motion for a judgment of acquittal.

Affirmed.

**GILLETTE, P. J.,** concurring.

We today hold that the manager of a fraternal organization is a misdemeanant, because his club puts on extra paid help on the evenings it runs bingo. I agree, but only because the language of the statute is too clear to permit any other result. At the same time, I cannot help but think that many — perhaps even a majority — of those legislators who voted for this statutory scheme, if confronted with these facts, would say that they would not

---

[2] The bingo profits reportedly went to the chapter's charitable and building funds.

[3] According to defendant's brief, the DAV chapter conducts bingo games four days per week, paying workers $30 per day for assisting in the operation. The income for a worker on a regular basis is thus $120 per week or $480 per month. The stipulated facts include a statement by defendant that the chapter employed 11 workers for this purpose. Whether all 11 were employed each day is not stated, but even if each worker were employed only "half" time, two days a week, this would amount to a payroll in excess of $34,000 per year.

[4] Our duty in construing a statute is to give words of common usage their natural, plain and obvious meaning. *Perez v. State Farm Mutual Ins. Co.,* 289 Or 295, 299, 613 P2d 32 (1980). In doing so, that sense of the words is to be adopted which best harmonizes with context and promotes policy and objectives of the legislation. *State ex rel Nilsen v. Ore. Motor Ass'n,* 248 Or 133, 137, 432 P2d 512 (1967). In addition, as both parties have noted, the legislature's choice of the words "profits in any manner" indicates that it intended a very broad interpretation for the term.

wish to see criminal prosecution here. Such are the vagaries of statutory language, focused through prosecutorial discretion. On the basis of today's analysis, I assume the result would be the same if it were shown that either (1) the club used more electricity than it would on other nights, because some of the bingo machinery was electrically powered, and the local utility company "profited"; or (2) a waitress serving drinks to players made more in tips on bingo nights than otherwise, because there were more customers. It may be argued that a prosecutor would not waste his time with such cases, but the present case casts some doubt upon reliance on prosecutorial discretion as a moderating influence.

If the present statutory language is allowed to stand — and I do not pretend that I could propose better language — the legislature should understand that it has painted with this very broad brush.