Argued and submitted June 19, 2007, decision of Court of Appeals reversed; judgment of circuit court reversed; case remanded to circuit court for further proceedings May 8, 2008

Kiril IVANOV,
Nicole Busse, Tricia Kerns,
Teresa Chun,
fka Teresa Roelfs,
and Michael Shawn-Chun,
fka Michael Shawn,
*Petitioners on Review,*

*and*

Richard TYLER
and Natalya Gladysh,
*Plaintiffs,*

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
an Oregon corporation;
Farmers Group, Inc.,
a foreign corporation;
Farmers Insurance Exchange,
a foreign corporation;
Mid-Century Insurance Company,
a foreign corporation,
Truck Insurance Exchange,
a foreign corporation,
and any Farmers Company whose name will subsequently
be identified that should be made a Defendant in this case
in order that complete relief can be granted to
Plaintiffs and to the class,
*Respondents on Review.*

(CC 9910-10826; CA A123043; SC S054199)

185 P3d 417

Phil Goldsmith, Law Office of Phil Goldsmith, Portland, argued the cause for petitioners on review. With him on the briefs were Thomas D'Amore, D'Amore & Associates, PC, Gatti Gatti, Maier, Krueger, Sayer & Assoc., and Nelson & MacNeil.

James N. Westwood, Stoel Rives LLP, Portland, argued the cause for respondent on review. With him on the briefs were Robin Beck Skarstad, Michael D. Hoffman, and Mark Elgin Olmstead.

Meagan A. Flynn, Portland, submitted a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Richard S. Yugler and David N. Goulder, Landye Bennett Blumstein LLP, Portland, submitted a brief on behalf of *amicus curiae* Strawn.

DE MUNIZ, C. J.

Balmer, J., concurred in part and dissented in part and filed an opinion, in which Kistler and Linder, JJ., joined.

## DE MUNIZ, C. J.

This case involves Oregon's Personal Injury Protection (PIP) statutes, ORS 742.518 to 742.540. Plaintiffs initiated this case by filing what they initially styled as a class action against defendant insurance companies (Farmers), seeking payment of PIP-related medical expenses that Farmers had denied. Plaintiffs also sought a declaratory judgment holding that "Farmers may not deny [PIP] benefits to its insureds solely on the basis of generalized criteria not specific to claimants' injuries," and that "Farmers may not deny [PIP] benefits to [its] insureds * * * unless [the] determination is based on a contemporaneous physical examination [IME] of the insured by a physician selected by Farmers." In response, Farmers filed a "Motion for Summary Judgment and Memorandum in Opposition to Plaintiffs' Motion for Class Certification."[1]

In its summary judgment motion, Farmers did not address plaintiffs' claims that, in using generalized preplanned criteria not specific to each claimant, Farmers' claim review process breached its insurance contracts and violated the PIP statutes. Instead, Farmers argued that: (1) under ORS 742.524, insureds such as plaintiffs, whose PIP claims had been timely denied, had the burden of proving that their claims were medically necessary before their challenge to Farmers' claims review process could proceed to a trier of fact, and (2) plaintiffs had failed to produce sufficient medical opinion evidence on that issue in response to Farmers' summary judgment motion. In opposing summary judgment, plaintiffs argued that Farmers' denials of their PIP claims were based on generalized criteria that (1) were not specific to the insured's injuries; (2) were not based on an IME; and (3) in any event, involved bills for medical charges that were presumed to be medically reasonable and necessary at the time they were submitted, thus allowing the medical bills themselves to provide the evidence needed for plaintiffs' case to proceed to a determination on the merits.

The trial court subsequently granted Farmers' summary judgment motion and disposed of all of plaintiffs'

---

[1] The trial court resolved the case on Farmers' motion for summary judgment and therefore did not decide plaintiffs' motion for class certification.

claims. The trial court concluded that, "[as] a matter of law the PIP statutes do not require a contemporaneous medical examination [IME] of the insured prior to the denial of any claim" and that, in any dispute over the payment of a PIP claim, "the insured bears the burden of [proving that their medical expenses are medically reasonable and necessary]." On appeal, the Court of Appeals affirmed, albeit on narrower grounds. It held that, as a predicate to challenging Farmers' claims review process, plaintiffs were required to prove that their PIP expense claims were medically reasonable and necessary and that, in the absence of expert medical opinion, plaintiffs had failed to produce "evidence from which a trier of fact could infer that the claimed expenses were necessarily incurred[.]" *Ivanov v. Farmers Ins. Co.*, 207 Or App 305, 317, 140 P3d 1189 (2006). We allowed plaintiffs' petition for review and, for the reasons explained below, reverse the decision of the Court of Appeals and the judgment of the trial court.

In reviewing a grant of summary judgment, we view the facts from the summary judgment record and all reasonable inferences that we may draw from them in the light most favorable to the nonmoving party—in this case, plaintiffs. *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004). In accordance with that methodology, the record establishes that plaintiffs are Oregon residents who each purchased automobile insurance policies from Farmers and were subsequently involved in automobile accidents. Because of those accidents, plaintiffs each submitted claims for their respective medical expenses under the PIP provisions of their policies and Farmers denied those claims.

As a result of those claim denials, plaintiffs filed this action against Farmers, alleging that the process underlying Farmers' denial of their PIP-related medical claims constituted breach of contract, fraud, breach of the implied covenant of good faith, tortious breach of the duty of good faith, and intentional interference with contractual relations.[2] Specifically, plaintiffs alleged that Farmers had failed to inform

---

[2] In the course of considering Farmers' summary judgment motion, neither the parties nor the trial judge raised issues regarding the individual elements of the various legal claims set out in plaintiffs' complaint. The parties have similarly ignored those matters on review.

its insureds that, as part of an undisclosed cost containment policy, Farmers had made a business determination to employ computerized billing or file review services as a way to justify the denial of otherwise valid claims for PIP benefits. According to plaintiffs' complaint, Farmers knew that the review services it employed used automatic medical cost containment software based on generalized, preplanned criteria not specific to a claimant's particular injuries. Farmers' goal in using such review services, plaintiffs asserted, was to avoid full reimbursement of otherwise "reasonable and necessary" medical expenses.[3] In addition to money damages, plaintiffs' complaint also sought declaratory relief prohibiting Farmers from denying medical treatment claims based on generalized criteria not specific to a claimant's injuries and on determinations that specific treatments were not medically necessary, unless those determinations were made by an examining physician.

As previously noted, Farmers moved for summary judgment on all of plaintiffs' legal claims, contending that the overriding question presented by plaintiffs was a question of law that could be resolved under ORS 742.524(1)(a). In moving for summary judgment, Farmers did not deny that it used the software and protocols just described to decide whether to pay plaintiffs' claims. Neither did Farmers attempt to establish on the record that its claims review process met contractual and statutory PIP requirements, either as to plaintiffs' specific claims, or as to general claims for medical expenses like those that plaintiffs made. Farmers argued, instead, that plaintiffs were required to prove the medical reasonableness

---

[3] Throughout their action, plaintiffs have used the statutory terms "necessary" and "reasonable" primarily to distinguish between two distinct classes of complainants: those to whom Farmers denied PIP benefits based on a determination that the services they received were not medically *necessary*, and those denied PIP benefits based on a determination that the fees charged for those services were not *reasonable*—allegedly because those fees exceeded Farmers' predetermined fee schedules. Plaintiffs contended that the use of fee schedules was improper, and the resulting "fee schedule" issue came to denominate a specific damages subclass within plaintiffs' class action framework. Plaintiffs, however, abandoned those particular claims on appeal. *See Ivanov*, 207 Or App at 309 n 2 (so stating). Nevertheless, because plaintiffs' fee schedule claims class was, as a matter of record, distinct from the class of policyholders whose medical expenses were denied as medically unnecessary, there is no basis from which to infer that plaintiffs' abandonment of their fee schedule issue was meant to have any impact on the primary issue now before this court.

and necessity of their individual claims. However, as we explain below, plaintiffs' complaint challenged Farmers' claims review process itself as failing to comply with contractual and statutory PIP criteria, and the issues raised by the complaint thus are logically akin to the issue of whether a specific plaintiff's medical expenses should be covered.

A brief recitation of the purposes and functions of the PIP statutes provides a useful foundation for our analysis. ORS 742.524(1) provides, in part:

> "Personal injury protection benefits as required by ORS 742.520 shall consist of the following payments for the injury or death of each person:

> "(a) All reasonable and necessary expenses of medical, hospital, dental, surgical, ambulance and prosthetic services incurred within one year after the date of the person's injury, but not more than $15,000 in the aggregate for all such expenses of the person. *Expenses of medical, hospital, dental, surgical, ambulance and prosthetic services shall be presumed to be reasonable and necessary unless the provider* [of those services] *is given notice of denial of the charges not more than 60 calendar days after the insurer receives from the provider notice of the claim for the services.* At any time during the first 50 calendar days after the insurer receives notice of claim, the provider shall, within 10 business days, answer in writing questions from the insurer regarding the claim. For purposes of determining when the 60-day period provided by this paragraph has elapsed, counting of days shall be suspended if the provider does not supply written answers to the insurer within 10 days and shall not resume until the answers are supplied."

(Emphasis added.)

In *Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 300, 613 P2d 32 (1980), this court described the PIP statutes as having been created "to provide, promptly and without regard to fault, reimbursement for some out-of-pocket losses resulting from motor vehicle accidents." Under that no-fault format, every motor vehicle liability policy issued in Oregon must provide "personal injury protection benefits" to the person insured under the policy. ORS 742.520. Claims for those statutorily mandated benefits are presumed to be "reasonable and necessary" unless the insurer denies a claim within

60 days of receiving it. ORS 742.524 (1)(a). Among other things, the benefits set out in the statutes cover "[a]ll reasonable and necessary expenses of medical, hospital, dental, surgical, ambulance and prosthetics services incurred within one year after the date of the person's injury, but not more than $15,000 in the aggregate for all such expenses of the person." *Id.* The statute requires an insurer to "pay all personal protection benefits *promptly* after proof of loss has been submitted to the insurer." ORS 742.520(4) (emphasis added). The term "promptly" takes into consideration a 60-day period following an insurer's receipt of the claimed expenses during which time the insurer can deny the claim. ORS 742.524(1)(a). During the first 50 days of that period, an insurer may tender written questions to the healthcare provider regarding the claim and the provider must answer within 10 business days of the tender. Should a provider fail to respond within that time, the 60-day period is tolled until the insurer receives an answer from the healthcare provider. *Id.* To challenge a denied claim, the insured may submit to binding arbitration under ORS 742.520(6) and ORS 742.522 or, as plaintiffs did in this case, file a civil action against the insurer.[4] If the insured prevails, the insured can recover attorney fees from the insurer. ORS 742.061.

■ ■    To prevail on summary judgment as the moving party, Farmers had the burden of showing that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Stanfield v. Laccoarce*, 288 Or 659, 665, 607 P2d 177 (1980). As noted, according to Farmers, plaintiffs cannot challenge Farmers' PIP claim processing practices in this civil action unless plaintiffs can first demonstrate, in response to Farmers' summary judgment motion, that their claimed medical expenses were necessary. Specifically, Farmers asserts, as it did before the trial court and the Court of Appeals, that plaintiffs' medical bills alone are insufficient to establish the requisite proof of medical necessity.

---

[4] The potential existence of a tort cause of action against any person does not relieve an insurer from its duty to pay PIP benefits under the statutes. ORS 742.520(5).

■■     Farmers' argument in that regard, however, and its framing of the issue to be decided on summary judgment, are both premised on a faulty reading of ORS 742.524(1)(a). ORS 742.524(1)(a) creates a presumption that PIP-related claims for medical expenses submitted by a healthcare provider are reasonable and necessary at the time that they are submitted to an insurer. The effect of such a presumption is set forth in ORS 40.120, which provides:

> "In civil actions and proceedings, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."[5]

Consequently, we believe that it follows that the presumption established by the legislature in ORS 742.524(1)(a) attaches to PIP claims at their inception and, once established, functions as any other civil presumption, *i.e.*, it shifts the burden of proof to the party against whom it is directed— in this case, the insurer. That means that the legislature intended that, under ORS 742.524(1)(a), the presumption would operate as follows: When a healthcare provider submits a PIP claim for medical expenses on behalf of an insured, the expenses are presumed to be reasonable and necessary. An insurer may issue a timely denial of a claim to a provider and, once it does so, the expenses are no longer entitled to that presumption. However, it is not the validity of Farmers' claim *denials* that plaintiffs seek to challenge in this action. Instead, plaintiffs challenge the sufficiency of Farmers' investigation of their claims *before* Farmers' issued its denials, *i.e.*, they challenge Farmers' actions or lack thereof at the time the claims were presumed medically reasonable and necessary.

---

[5] We note that, at one time, the legislature distinguished among conclusive presumptions, rebuttable presumptions, and permissive inferences within Oregon's statutes. That no longer is true. In *State v. Rainey*, 298 Or 459, 462 n 2, 693 P2d 635 (1985), this court explained that, because the legislature had since omitted any reference to conclusive presumptions in the Oregon Evidence Code, the only presumption remaining in this state's evidentiary rules is one that is disputable or rebuttable within the terms specified in ORS 40.120. *See also State v. Dahl*, 336 Or 481, 487, 87 P3d 650 (2004) (concluding that, when legislature referred to a "rebuttable presumption" within the statutes at issue in that case, it intended to refer to the procedural device described in ORS 40.120).

In *Best v. U. S. National Bank*, 303 Or 557, 561, 739 P2d 554 (1987), the court restated the long standing rule in Oregon "that there is an obligation of good faith in the performance and enforcement of every contract." That obligation of good faith performance and enforcement applies equally to the contractual relationship that exists between Farmers and its insureds seeking their contractual and statutory PIP benefits. In determining the manner in which the common-law obligation of good faith imposed on Farmers applies here, we note that the legislature has prohibited insurers from denying payment of claims without conducting a "reasonable investigation" of those claims. In that regard, ORS 746.230(1) provides, in part:

> "No insurer or other person shall commit or perform any of the following unfair claim settlement practices:
>
> "* * * * *
>
> "(d) *Refusing to pay claims without conducting a reasonable investigation based on all available information*[.]"

(Emphasis added.) Under that statute, an insurer is obligated to conduct a "reasonable investigation" sufficient to support a decision to deny a medical expense claim that is statutorily "presumed to be reasonable and necessary." Obedience to that prohibition is a component of Farmers' good faith obligation in this context.

Contrary to the determinations below that plaintiffs had the initial burden of establishing medical necessity, the nature of plaintiffs' claims instead required Farmers to establish that the denials it had issued were based on reasonable investigations before Farmers could prevail on its summary judgment motion. As the moving party, Farmers had the burden of showing "that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C. At the time that Farmers was processing the medical claims at issue here, those claims were presumed to be medically necessary; as a result of that presumption, plaintiffs were not responsible for establishing medical necessity at that point in time. Consequently, because the gravamen of plaintiffs' complaint was that Farmers' review methodology was an impermissible

one, Farmers needed to establish that the procedures it employed to deny plaintiffs' claims satisfied its statutory and common-law duties and did not violate the prohibition set out in ORS 746.230(1)(d). In seeking summary judgment, however, Farmers presented nothing to support the validity of its claims review process in general, nor any evidence in particular establishing that the process included a reasonable investigation of the submitted claims in this case. Because the resulting evidentiary record failed to establish that Farmers' claim denials were supported by reasonable investigations, plaintiffs did not have to produce evidence of medical necessity (beyond the still-valid presumption regarding their medical bills) in order to defeat Farmers' summary judgment motion.[6]

We do not intend our disposition of the parties' summary judgment arguments to resolve the question of whether Farmers' claim denials are legally sustainable with respect to the named plaintiffs in this case; that is an issue which has yet to be decided at trial. As already noted, the trial court ruled, as a matter of law, that the PIP statutes do not require an IME to be an integral part of each and every investigation of each and every claim for which payment is denied. We agree with that statutory interpretation—as far as it goes—but note that the basis for the trial court's holding was, in part, the now-rejected notion that the presumption set out in ORS 742.524(1) exists only if an insurer does not deny a PIP claim within 60 days. We have corrected that error here and this case must be returned to the circuit court for further proceedings. As to those proceedings, we note only that, although it is clear that the statutes do not expressly require an IME in every instance, an IME may nevertheless be required as part of a reasonable investigation, depending on the facts of an individual claim.

We conclude that at the time an insurer decides to accept or deny a PIP claim—the time period at issue in this

---

[6] Plaintiffs did not file a cross-motion for summary judgment and have not contended at any stage of the proceedings that they were entitled to anything more than the right to have their claims decided by a trier of fact.

action—those expenses are presumed to be medically reasonable and necessary. Because the record on summary judgment did not raise any factual question concerning validity of Farmers' claim review process—much less establish the validity of that process as a matter of law—Farmers was not entitled to prevail on its summary judgment motion. Both the trial court and Court of Appeals erred in granting judgment in Farmers' favor.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.

**BALMER, J.,** concurring in part and dissenting in part.

I

I agree with the majority that the Court of Appeals erred in holding that plaintiffs could not challenge Farmers' claims review process without producing evidence, in addition to their medical bills, "from which a trier of fact could infer that the claimed expenses were necessarily incurred * * *." *Ivanov v. Farmers Ins. Co.*, 207 Or App 305, 317, 140 P3d 1189 (2006). Like the majority, I understand plaintiffs' legal challenge to be focused on the *claims review process itself*, rather than on whether a particular expense was properly denied. In those circumstances, the statutory question upon which the Court of Appeals decision turned—whether plaintiffs could rely upon the presumption in ORS 742.524(1)(a) with respect to "reasonable and necessary" medical expenses—was simply not relevant.

However, in my view, the majority misconstrues the issues that were raised and litigated in the trial court and therefore errs in reversing the trial court's entry of summary judgment for Farmers.[1] The trial court accurately summarized the complaint:

---

[1] As I discuss in greater detail below, the trial court issued two letter opinions, one with respect to the "IME issue" and one with respect to the "fee schedule" issue. Before the Court of Appeals, plaintiffs expressly abandoned the fee schedule issue, *Ivanov*, 207 Or App at 309 n 2, so this case concerns only the trial court's decision regarding the IME issue.

"[Plaintiffs] contend that any denial of benefits *without the support of a contemporaneous physical examination* of the insured constitutes breach of contract, contractual and tortious breach of the duty of good faith and fair dealing, intentional interference with contractual relations, and fraud."

(Emphasis added.) That was plaintiffs' claim, and Farmers moved for summary judgment on the ground, among others, that no statute or contractual provision required such examination. As I describe below, the trial court properly granted Farmers' motion for summary judgment, and I respectfully dissent from the majority's decision to the contrary. I would affirm the trial court's judgment, but I would do so for the reasons articulated by the trial court, rather than those given by the Court of Appeals.

I should note at the outset that the majority has done yeoman work in seeking to make sense of the shifting positions of the parties in the trial court and on appeal. This case illustrates the not infrequent circumstance in which a class action is filed, often as one of a series of similar cases around the country, challenging a particular practice of a large insurer or other corporation. (Indeed, plaintiffs here cite numerous pending cases in other jurisdictions making almost identical claims against these and similar defendants.) The plaintiff is faced with the challenge of drafting a complaint that alleges sufficient facts about the defendant's conduct to demonstrate violation of a statutory or contractual obligation and avoid summary judgment; at the same time, the allegations must be sufficiently generic and common to the potential class members to permit the plaintiff to obtain class certification. For its part, the defendant looks for a clean issue on which it may prevail on summary judgment, even if that means highlighting some allegations in the complaint and ignoring others. In response, the plaintiff's counsel faces the dilemma of trying to defeat summary judgment as to the named plaintiff by pointing to disputed issues of material fact, while not asserting facts with respect to the named plaintiff that may also be used by the defendant to defeat class certification. The busy trial judge, now examining the fifth version of a lengthy complaint and a case file that now covers six volumes, with the actual trial nowhere in sight, tries to focus the parties' attention on the specific legal issues.

Then, on appeal, and again on review in this court, the parties have time to reconsider and perhaps regret concessions or positions that they took at earlier stages in the litigation.

All of this is part of the civil litigation process and nothing in this record suggests that any party was not acting in good faith, but we need to take care not to let the parties shift the primary issues in a case once those issues are litigated and decided in the trial court. Considerations of efficiency and finality require us to be circumspect in allowing parties to recast their case on appeal. In my view, the majority errs in deciding this case on a legal issue that is different from the issue that the parties presented as the controlling legal question on summary judgment and that the trial court correctly decided.

## II

The majority, focusing on the issue decided by the Court of Appeals and on plaintiffs' petition for review, asserts that Farmers' argument on summary judgment was that "plaintiffs were required to prove the medical reasonableness and necessity of their individual claims." 344 Or at 426-27. The Court of Appeals had agreed with that proposition and had concluded that because the claims had been *denied*, plaintiffs could not rely on the "presumption" in ORS 742.524(1)(a) that a submitted medical expense is "reasonable and necessary" if the insurer does not deny it within 60 days. 207 Or App at 310. In the Court of Appeals' view, because plaintiffs could not rely on that presumption and because they failed to submit other evidence to establish that the claims were reasonable and necessary, Farmers was entitled to summary judgment. *Id.* at 314-17.

I agree with the majority that the Court of Appeals erred because, as the majority states, "the gravamen of plaintiffs' complaint was that Farmers' review methodology was an impermissible one * * *." 344 Or at 430-31. In other words, contrary to the Court of Appeals' analysis, plaintiffs retained the benefit (if any) from the statutory presumption because they did not challenge any specific claim denial, but rather the review process that led to the denials.

My disagreement with the majority is based on my understanding of the issues litigated in the trial court. As noted, the majority frames the issue as whether Farmers was correct in arguing that "plaintiffs were required to prove the medical reasonableness and necessity of their individual claims." Although that may have been one of Farmers' arguments, the primary legal issue that the parties disputed and that the trial court decided on summary judgment was, as *plaintiffs themselves* put it (and as the trial court repeated in its opinion), "whether Farmers was required to have support from a medical examination conducted by a qualified professional before it could reject a claim." *That* was the issue that the parties litigated and *that* was the issue on which the trial court based its decision to grant summary judgment. The majority errs, first, in allowing plaintiffs to raise a new and different argument on appeal, and second, in reversing summary judgment on that basis.

### III

In their fourth amended complaint, plaintiffs made various allegations that Farmers had a policy of paying less than 100 percent of "reasonable and necessary" PIP medical expenses, in violation of its statutory and contractual obligations. Plaintiffs alleged that this policy was implemented by means of cost containment programs, including treatment protocols, computer programs, bill or file review services, and fee schedules that arbitrarily determined that certain services were not "necessary" and that also arbitrarily established payment amounts for particular services that were not "reasonable." Although plaintiffs asserted various claims for relief, including breach of contract, fraud, and so on, all their claims were based on Farmers' claims review procedures, as described above. Paragraph 19 is illustrative of plaintiffs' theory:

"* * * Farmers devised and continued a wrongful scheme which enabled Farmers to avoid the payment of legitimate costs for reasonable and necessary accident-related health care, to the damage of Plaintiffs and class members. Under this scheme *Farmers made determinations that medical treatments were not necessary without having a contemporaneous physical examination* of the insured conducted by a

physician selected by Farmers. In addition, Farmers determined that the fees charged for medical treatments were not reasonable based on its *fee schedules*. * * *"

(Emphases added.)

As I understand the summary judgment record, both parties and the trial court viewed those two issues—the "IME issue" and the "fee schedule" issue—as dispositive of the case. I focus on the IME issue, because, as noted earlier, plaintiffs now have abandoned the fee schedule issue. In their class certification motion, plaintiffs stated that the "overriding question" on class certification (with respect to the IME class) was whether Farmers was "required to have support from a medical examination conducted by a qualified physician before it could reject a claim." In its summary judgment motion, Farmers argued—correctly, it seems to me—that plaintiffs' theory of the case had evolved to that point through the filing of several amended complaints, apparently in an effort to identify a common question in order to prevail on their class certification motion.

Farmers' motion for summary judgment argued, among other things, that nothing in the PIP or insurance statutes or in the insurance contract *required* them to conduct an IME before denying every claim or provided that any denial without an IME was necessarily "arbitrary."[2] Plaintiffs, in their opposition to the summary judgment motion, also treated that issue as dispositive. Plaintiffs argued that an IME was the *only permissible basis upon which Farmers could* legitimately deny a medical expense claim. As to the presumption that a submitted medical expense is "reasonable and necessary" if not denied within 60 days, ORS 742.524, plaintiffs stated: "[T]o validly rebut this prima facie case, an insurer must have evidence based on a comparable

---

[2] The majority thus incorrectly describes Farmers' summary judgment motion as based solely on the argument that plaintiffs had the burden of proving that their claims were medically necessary and that plaintiffs had failed to submit medical evidence to support those claims. 344 Or at 424-25. In fact, Farmers clearly asserted in briefing and oral argument that one reason that it should prevail on summary judgment was that plaintiffs' claims turned on whether Oregon law required an IME prior to every denial. Farmers continued to assert that argument before the Court of Appeals; moreover, Farmers also correctly asserted that plaintiffs, on appeal, were advancing arguments in opposition to summary judgment that plaintiffs had not made in the trial court.

professional's physical examination of the insured." Plaintiffs' Opposition at 5. Plaintiff later asserted, "During the 60 day [review] period, an insurer may contest a covered medical bill as unreasonable or unnecessary *as long as that insurer has conducted an IME*." *Id.* at 7 (emphasis added). Plaintiffs made precisely the same argument with respect to their claim that Farmers' practices were inconsistent with the terms of the insurance policy: the policy "obligates them to accept bills submitted by a claimant's medical professionals as reasonable and necessary absent an IME." *Id.* at 9.

The oral argument on the summary judgment motion shed less rather than more light on the topic. Plaintiffs' counsel, at some points, seemed to suggest that he viewed all of Farmers' procedures for reviewing claims as "arbitrary" and that because, on summary judgment, Farmers had failed to demonstrate that they were *not* arbitrary, "it follows necessarily that the only way—the only non-arbitrary way that they could deny claims on the basis of necessity is by using an IME." Transcript at 224. (That view, however, is inconsistent with the fourth amended complaint, which clearly alleges, as quoted above, that any denial without an IME is invalid, not that every basis defendant has used for a denial is arbitrary and therefore only an IME will suffice.) At other points during the summary judgment argument, however, plaintiffs' counsel clearly rested his case on his theory that the statute and the policy affirmatively required an IME before any claim could be denied. Farmers' counsel told the trial court that the issue of whether an IME was required by statute was not a question of fact for the jury, but rather an issue of law. The court asked plaintiffs' counsel whether he agreed with that, and he said that he did. Transcript at 179-80. And, when the trial court summarized plaintiffs' statutory argument as asking the court "to draw the final conclusion that [a denial of a claim as unreasonable or unnecessary] *is arbitrary when a denial is made without an IME*[,]" plaintiffs' counsel agreed. Transcript at 189 (emphasis added). Moreover, plaintiffs' counsel acknowledged that it would be problematic to base plaintiffs' case on the general allegation that all of Farmers' denials that were based on programs or procedures other than an IME were "arbitrary."

> "[W]e called it [the concept that Farmers denied claims on a variety of grounds that plaintiffs believed were improper]

fee schedules and it turns out that this is a word that I meant I will admit I made the word up and apparently [it?] meant nothing to anybody else other than me. We could have said we wanted to have a class based on people who had their claims denied on arbitrary means. And you can imagine I mean I guess I wouldn't have said that because I would imagine that you would find that objectionable. I mean[,] what is an arbitrary means?

"I mean what we did basically was rather than using a term, an unspecific term that could include or not include a variety of things, we said this is only things that work, and we have—what I'm going to show you is that we have evidence that everything else is or at least for summary judgment there are genuine issues of material facts suggesting that everything else [other than an IME] is arbitrary."

Transcript at 221-22.

The trial court also understood that the legal dispute between the parties on the IME issue was whether Oregon statutes or the insurance policy required Farmers to conduct an IME before denying any PIP expense. In the trial court's letter opinion, the trial court stated plaintiffs' position as that "defendants must refute the proof which plaintiffs have offered by obtaining the opinion of a physician who physically examined plaintiff prior to the denial." The trial court addressed and rejected that argument: "As a matter of law the PIP statutes do not require a contemporaneous medical examination of the insured prior to a denial of any claim, whether it is for the necessity of the medical treatment or the reasonableness of the bills." The trial court therefore granted Farmers' motion for summary judgment.

Plaintiffs then filed a document that they styled as an "Opposition to Entry of Judgment," objecting to the form of judgment that Farmers had prepared. Again, plaintiffs made it absolutely clear that they viewed the two "theories" for class certification and summary judgment as follows:

"(1) that PIP claims could not be denied as unnecessary without a contemporaneous physical examination conducted on behalf of defendants and (2) that such claims could not be denied as unreasonable based on Farmers' fee schedules."

Plaintiffs acknowledged that the trial court had resolved the IME issue against them, but stated that the trial court's opinion "le[ft] unaddressed the 'fee schedule' claim." For that reason, plaintiffs argued that the trial court's order had not disposed of all the claims in the complaint. In their objection to the judgment, however, plaintiffs never argued to the trial court that its understanding of their position on the IME issue was flawed.

In response, the trial court issued a second letter opinion addressing the "fee schedule" issue. The trial court noted that,

"Because the plaintiffs had identified the IME-only as the issue before the court, the Opinion focused on that theory. However, this court did intend, in its conclusions [at the end of the earlier opinion] to address the 'fee schedule' class to the extent that it was not tied to the IME theory."

The court acknowledged that further clarification was appropriate and went on to conclude that, as to the fee schedule issue, because plaintiffs had failed to present evidence to establish the reasonableness and necessity of the expenses, beyond the bills themselves, Farmers was entitled to summary judgment.

On appeal, plaintiffs continued to characterize their complaint as based on the theory that the PIP statutes and the insurance policy barred Farmers from denying a medical expense as "unnecessary" unless Farmers had conducted an IME. In their opening brief in the Court of Appeals, plaintiffs described the case this way:

"Plaintiffs alleged that Farmers devised a scheme to avoid paying PIP benefits for reasonable and necessary accident-related health care. * * * One element of that scheme involved Farmers determining that medical expenses were not necessary without having a contemporaneous examination of the insured conducted by a physician it selected ('the IME issue'). * * * Another part of the scheme involved Farmers determining based on its fee schedules that fees charged for medical treatments were not reasonable ('the fee schedule issue'). * * *"

Appellants' Opening Brief at 1-2 (citations to complaint omitted). At that point plaintiffs included a footnote: "Plaintiffs

expressly abandon the fee schedule issue and will not discuss it on appeal."

It is true that, at certain points in their brief, plaintiffs combine their assertion that an IME always is required before a claim can be denied with the slightly different assertion that "*all other methods* * * * used for such denials violate the settled prohibition against a PIP insurer acting arbitrarily" (emphasis added). What plaintiffs apparently fail to recognize, however, is that the argument that "all other methods" leading to a claim denial are arbitrary and therefore improper is simply the other side of the coin of the argument that the PIP statutes and the policy require an IME for a valid denial. To the extent that plaintiffs alleged—as they did—that as a matter of statute and contract, the "methods" Farmers used to deny claims were invalid and the *only* valid basis for a denial was an IME, their IME claim was vulnerable to Farmers' legal argument that the statutes and contract do not require an IME. I discuss below whether that argument is correct or not, but the point here is that Farmers' summary judgment motion was dispositive of plaintiffs' IME claims (although not necessarily of their fee schedule claims).[3]

The Court of Appeals viewed the proceedings in the trial court the same way I do:

> "Plaintiffs' underlying theory of recovery for each claim was that, either by statute or based on their insurance policies, defendants were precluded from using arbitrary methods to review the reasonableness and necessity of claimed medical expenses, *that the only nonarbitrary method of review was to conduct an independent medical examination (IME), that*

---

[3] Another interpretation of plaintiffs' position that is consistent with the record is that plaintiffs' "fee schedule" claim subsumes their claim that "all other methods" upon which denials of claims were based (other than IMEs) were "arbitrary." That certainly is the gist of the statement of plaintiffs' counsel, quoted previously, that he "made up" the term "fee schedule" to cover Farmers' different procedures for reviewing expenses because he thought that the court would object to the general claim that those procedures were "arbitrary." Transcript at 221-22. So read, plaintiffs' two claims were: (1) IMEs always are required before a claim can be denied; and (2) all other methods for denying claims (generally referred to as fee schedules) are arbitrary and inconsistent with Farmers' statutory and contractual obligations. Plaintiffs lost on both claims in the trial court and appealed only the IME issue.

*defendants failed to conduct IMEs* in reviewing plaintiffs' claims, and that, *therefore*, defendants' denials of PIP benefits were wrongful.

"Defendants moved for summary judgment on all of plaintiffs' claims, arguing that plaintiffs had the burden of proving that the medical expenses they claimed were reasonable and necessary and that plaintiffs had failed to produce any evidence on those issues. *Defendants further argued that, as a matter of law, neither the PIP statutes nor the insurance policies required defendants to conduct an IME before denying a claim, and therefore, there was no cognizable basis for any of plaintiffs' claims.* The trial court agreed with both of defendants' arguments * * *."

207 Or App at 308-09 (footnotes omitted; emphases added).

In my view, the question that this court should decide is the same question presented to the trial court (which decided it) and to the Court of Appeals (which did not, because it based its decision on a different ground): do the PIP statutes or the applicable insurance policy provisions require the insurer always to conduct an IME before denying a claim?

IV

The short answer to that question—the only one that, in my view, plaintiffs legitimately are *entitled* to have answered on appeal—is that the statutes do not make an IME a prerequisite for every valid denial of a PIP medical expense claim. The majority agrees with that interpretation of the statute. 344 Or at 431. ORS 742.520(4) provides:

"An insurer shall pay all personal injury protection benefits promptly after proof of loss has been submitted to the insurer."

Additionally, ORS 742.524(1)(a) provides that PIP benefits are to include all "necessary and reasonable expenses of medical, hospital [and similar] services * * *." As the majority correctly points out, those expenses "shall be presumed to be reasonable and necessary unless the provider is given notice of denial of the charges not more than 60 calendar days" after receiving notice of the claim from the provider. *Id.* The statutes provide a process for the insurer to ask questions of the

provider with respect to a claim (and receive responses), before being subjected to the "reasonable and necessary" presumption. *Id*. Moreover, other insurance statutes applicable to Farmers make it an unfair claim settlement practice for an insurer to refuse to pay a claim "without conducting a reasonable investigation based on all available information[.]" ORS 746.230(1)(d).

The statutes quoted above require an insurer to pay valid claims for personal injury protection benefits promptly after submission. They encourage prompt processing by establishing a presumption that a claim is reasonable and necessary if the insurer does not deny the claim within 60 days, and they penalize an insurer that fails to resolve claims promptly by requiring it to pay the insured's attorney fees. ORS 742.061. Nothing in the PIP statutes even suggests that an IME always is required before a claim can be denied. The prohibition on unfair claim settlement practices further undercuts plaintiffs' argument, because it specifically says what an insurer is required to do before refusing to pay a claim. And what an insurer *is* required to do is to "conduct[ ] a reasonable investigation based on all available information[.]" It may be the case that the reasonable investigation of a particular claim will require an IME, but that is a far cry from the requirement that plaintiffs purport to find—or, more accurately, ask this court to find—in the statutes.

Plaintiffs also argue that the applicable insurance policy requires an IME before a PIP claim can be denied. That argument also is without merit. The policy simply echoes the statutory requirements. The policy covers PIP benefits and defines those benefits as "the benefits required by Sections 742.520 and 742.524 O.R.S." The policy covers medical expenses, which are "all reasonable and necessary expenses * * *." What this court said about the PIP policy in *Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 299, 613 P2d 32 (1980), is equally applicable here:

> "Although the arrangement of the policy provisions varies slightly from that of the statute, the dispositive language is virtually identical. We find no indication of an intention to provide broader coverage than the statute requires."

The only specific policy provision that plaintiffs identify as a basis for their claim that IMEs are mandatory is the requirement that "[t]he injured person shall submit to physical examination by physicians at our expense selected by us when and as often as we may reasonably require." But that provision simply gives Farmers a contractual right to require a claimant to appear for an IME. It does not require Farmers to conduct an IME before denying a claim.

Because neither the statutes nor the insurance policy require an IME before every denial of a PIP claim, the trial court did not err in granting Farmers' motion for summary judgment on that ground.

V

The majority concludes that the trial court erred in granting summary judgment and remands the case to the trial court. The issues on remand will include whether, in using the different protocols, bill review processes, computer programs, or other grounds upon which Farmers denied PIP claims, Farmers violated its obligation under ORS 746.230(1)(d) not to deny claims except upon reasonable investigation. It certainly is possible that some plaintiffs can demonstrate that the specific method by which Farmers reviewed their claims failed to give them the reasonable investigation to which they were entitled and resulted in an improper denial of a claim that was reasonable and necessary. However, at least according to the evidence in the summary judgment record, Farmers has used a wide variety of protocols, programs, and individual reviewers at different times, in different geographic areas, and for different kinds of claims. In other words, in contrast to the question of whether an IME is always required—a question common to every member of the purported class—the profusion of other review methods suggests that the issue of class certification will look quite different on remand. The trial court will need to apply the ORCP 32 A and ORCP 32 B criteria in light of the different, allegedly arbitrary procedures Farmers has used to review claims, rather than the single issue of whether an IME is required for every valid denial. Moreover, because the majority concludes that an IME is not required in every instance, but "nevertheless [may] be required as part of a

reasonable investigation, depending on the facts of an individual claim," 344 Or at 431, it is uncertain whether there is any basis for the case to proceed as a class action at all.

For the reasons set out above, I concur with the majority's legal conclusions with respect to the effect of ORS 742.524(1)(a), but I respectfully dissent from its conclusion that the trial court judgment should be reversed.

Kistler and Linder, JJ., join in this concurring and dissenting opinion.